# Smith *v.* The State.

*Indictment for Larceny.*

1. *Indictment; sufficient averments of ownership of property.*—In an indictment for larceny from a storehouse, where the storehouse and the property alleged to have been stolen there-

10c

[Smith v. The State.]

from belonged to a partnership, the ownership of said store-house and the property is sufficiently laid in one of the members of the partnership.

2. *Larceny; presumption arising from possession of recently stolen property.*—The unexplained possession of property recently stolen, does not, as matter of law, raise a presumption of guilt of larceny; nor does unexplained possession of goods belonging to another raise the presumption that a larceny has been committed and that the possessor is guilty thereof.

3. *Larceny; corpus delicti; admissibilty of evidence.*—On a trial under an indictment for larceny, until the State has, by positive or circumstantial evidence, shown a *prima facie* larceny of the property described in the indictment—introduced evidence tending to establish the *corpus delicti*—which is a question for the determination of the court, evidence of the possession by the defendant of the goods alleged to have been stolen is inadmissible.

4. *Same; same; same.*—On a trial under an indictment for larceny, if the evidence introduced affords inference of the larceny of the goods alleged to have been stolen, the question of its sufficiency is for the determination of the jury, and it is for the jury to determine whether the *corpus delicti* has been proven; and in such a case evidence of possession by the defendant of goods of the same kind as those charged to have been stolen is competent and admissible.

5. *Larceny; admissibility of evidence.*—On a trial under an indictment for larceny from a storehouse, where the evidence tends to show that a porter who was employed at the store from which the goods were alleged to have been stolen was suspected as the accomplice of the defendant in the commission of the larceny, and there was evidence showing that such porter had access to the basement of the store in which the goods alleged to have been stolen were kept, that this basement opened upon an alley-way and adjoined another store, it is competent for the State to prove that the defendant was a porter in the adjoining store and had in his possession a key to its basement, which also opened on said alley-way; the tendency of such evidence being to show the defendant's opportunity of aiding said porter in committing the larceny or for the purpose of showing that he had an opportunity of receiving the said goods from the porter.

6. *Charge to the jury; reasonable doubt.*—In a criminal case, a charge which instructs the jury that "unless the evidence is such as to exclude to a moral certainty every hypothesis but that of the guilt of the defendant of the offense charged in

[Smith v. The State.]

the indictment, you should acquit him," is erroneous and properly refused, in that it omits the word "reasonable" as qualifying "hypothesis."

APPEAL from the Circuit Court of Lauderdale.
Tried before the Hon. E. B. ALMON.

The appellant was indicted, tried and convicted for larceny from a storehouse, and sentenced to the penitentiary for two years.

The indictment under which the defendant was tried and convicted charged larceny from the storehouse alleged to be the property of B. B. Garner, and further charged that the meat and lard stolen from said storehouse were the property of said B. B. Garner.

On the trial of the cause B. B. Garner, as a witness, testified that he was a member of the firm of Garner & Embry, who conducted a wholesale grocery business in the city of Florence; that prior to the arrest of the defendant on a warrant issued by a justice of the peace, they had missed lard and meat from their storehouse in considerable quantities. The witness further testified that the storehouse occupied by Garner & Embry had a basement where some of the goods were stored; that among the employes of the store was one Andrew Thompson, who was employed as a driver of one of the drays, and sometimes acted as a porter; that said Thompson had access to the basement and sometimes went into the basement alone; that he could have opened the rear door or window of the basement, which opened on the alley-way used for delivering goods, and in this way have disposed of the goods which had been stolen; that said Thompson was suspected of using the basement and door or window thereto in stealing the goods, which could be done by handing the goods to some one stationed outside the door into the alley way; that the defendant worked as a porter in the store of Sullivan & Hart Dry Goods Company, which immediately joined the store of Garner & Embry; that the store where the defendant worked had a basement and was situated similarly to the store of Garner & Embry, and that the defendant carried the key to said basement. To the part of this witness' testimony which related to the base-

ment and the facilities that were supposed to be offered for robbing the store, the defendant objected, and moved to exclude the same from the jury, unless it should be shown that the basement to the Sullivan & Hart dry goods store was in fact used for that purpose. In connection with this witness' testimony there was offered in evidence several pieces of meat and a bucket of lard which were shown to have been taken from the house of the defendant. The witness Garner testified that the meat stolen from the storehouse of Garner & Embry was of the same kind as that exhibited in evidence, and the lard was in buckets similar to the one introduced in evidence; that he could not say positively that the goods introduced in evidence as those taken from the house of the defendant were the identical goods stolen, but that they were of the class of goods which Garner & Embry dealt in and were of the same kind as the goods stolen.

This witness further testified that the store occupied by Garner & Embry did not belong to Garner & Embry; that the stock of goods belonged to said Garner & Embry, and that he was a member of said firm; and that he and said John Embry, the other member of the said firm, owned the goods alleged to have been stolen and owned the stock of goods in said store. The defendant moved the court to exclude the evidence of this witness and quash the indictment upon the ground that there was a variance between the indictment and the proof as to the ownership of the goods alleged to have been stolen, and between the indictment and the proof as to the ownership of the stock from which said goods were alleged to have been stolen. The court overruled the motion, and the defendant duly excepted.

There was other evidence introduced to show that the goods introduced in evidence and which were shown to the witness Garner, were taken from the house of the defendant while his house was being searched under the authority of a search warrant. The officer who took the goods from the defendant's house testified that the defendant claimed to have purchased said goods from

[Smith v. The State.]

one Jim Pruett, who conducted a retail grocery store in Florence; that while in the officer's presence the defendant asked Pruitt if he did not get said goods from him and Pruitt testified that he did sell such goods to the defendant.

Upon the examination of Pruitt as a witness, he testified that the goods sold by him to the defendant were not of the same character as those introduced in evidence.

The defendant introduced several witnesses who testified to his good character in the community where he lived for honesty. The defendant moved the court to exclude from the jury all the evidence introduced by the State having reference to his possession of the goods, or to any explanation of the possession of the goods by the defendant, upon the ground that no competent evidence had been introduced to show that the goods which the defendant was charged with having stolen were in fact stolen, or that they had been recently stolen, and that, therefore, until there was proof of the *corpus delicti,* no explanation could be required of the defendant as to his possession. The court overruled this motion, and the defendant duly excepted.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they must find the defendant not guilty." (2.) "Unless the evidence is such as to exclude to a moral certainty every hypothesis but that of the guilt of the defendant of the offense charged in the indictment, you should acquit him."

There was an application for a new trial, which was overruled, to which ruling the defendant duly excepted.

PAUL HODGES, for appellant.

CHAS. G. BROWN, Attorney-General, for the State.

TYSON, J.—The ownership of the property is sufficiently laid in Garner, one of the members of the partnership.—Code, § 4909; *White v. The State,* 72 Ala. 195; *Brown v. The State,* 79 Ala. 51.

It must now be regarded as settled in this State that the unexplained possession of property recently stolen does not as matter of law raise a presumption of guilt from the circumstance. Nor does the unexplained possession by one person of goods belonging to another raise the presumption that a larceny has been committed and that the possessor is a thief. Additional evidence is necessary to establish a *corpus delicti.* Unless the jury are satisfied beyond a reasonable doubt, that the offense has been committed, the unexplained recent possession of goods will not justify the conclusion that the person in whose possession they are found is the thief.—*Orr v. The State,* 107 Ala. 35; *Thomas v. The State,* 109 Ala. 25. "Proof of a charge, in criminal causes, involves the proof of two distinct propositions: first, that the act itself was done; and, secondly, that it was done by the person charged and by none other—in other words, proof of the *corpus delicti* and of the identity of the prisoner."—*Winslow v. The State,* 76 Ala. 47. It is undoubtedly true that both of these essential propositions are generally for the determination of the jury and both must be proved beyond a reasonable doubt. But where there is no proof of the *corpus delicti*—no testimony tending in the remotest degree to prove that the property charged to have been stolen, was in fact stolen—no larceny shown to have been committed, then there can be no conviction of the prisoner, should the goods described in the indictment charged to have been stolen be found in his possession, though no explanation as to how he came by them be given by him, or if given, is entirely unsatisfactory. In such case, the evidence is not *prima facie* sufficient to establish the *corpus delicti* and the court should not allow the introduction of evidence of possession by the prisoner of the goods charged in the indictment to have been stolen. In other words, until the State has by positive or circumstantial evidence shown a *prima facie* larceny of the goods, which is for the determination of the court, solely for the purpose of determining the admissibility of evidence tending to connect the prisoner with the commission of the offense, the prosecution is not entitled to introduce evidence of

[Smith v. The State.]

possession by defendant of the goods alleged to have been stolen. In this respect, the case would not be different from the one where an extra-judicial confession is sought to be introduced against one charged with a felony. Or where there is an entire want of evidence of the *corpus delicti* except statements made by the prisoner or unexplained possession of the goods alleged to have been stolen, the court should direct the jury to acquit the prisoner. On the other hand, if the evidence affords an inference of the larceny of the goods, then the question of its sufficiency is one for the jury and it becomes their province to determine whether the *corpus delicti* has been proven. In such case, evidence of possession by the prisoner of goods of the same kind as those charged to have been stolen is competent and the jury must determine upon the entire evidence, not only the question of the doing of the act, but whether committed by the defendant. Indeed the *corpus delicti* must often be proved by circumstances. In the case at hand, the owners of the goods charged to have been stolen were wholesale merchants. Garner, one of the partners, swears that meat and lard had been stolen from their store house. It is true he could not state definitely when these articles of merchandise were taken, and neither could he identify the meat and lard found in the possession of the defendant as his firm's property, nor could he say that particular lard and meat had been stolen from his store house. But he was positive that meat and lard had been stolen prior to the institution of the prosecution against this defendant. On this evidence we are of the opinion that there was some proof tending to establish the *corpus delicti*, the weight and sufficiency of which was properly left to the jury. Furthermore, we hold that it was sufficient to authorize the admission by the court of evidence of the possession by the defendant of meat and lard of the same kind as that which Garner said was stolen, and that the evidence of its identity was sufficient to be submitted to the jury when taken in connection with all the other evidence in the case.—Note 6 on page 258 of 78 Am. Dec.

It follows from what we have said that the defendant was not entitled to have given the general affirmative charge requested by him.

The other written charge requested was correctly refused.—*Bones v. The State,* 117 Ala. 138.

In view of Thompson's access to the basement of the store in which the goods alleged to have been stolen were kept and the fact that the windows and doors to this basement room were unbroken, it was entirely competent for the State to prove that the defendant was a porter in the store of the Sullivan & Hart Dry Goods Co., and that he had in his possession a key to the basement room under that store which opened upon the same alley upon which the basement of the other store opened. Clearly this testimony was relevant for the purpose of showing the defendant's opportunity of aiding Thompson in committing the larceny, or for the purpose of showing that he had the opportunity of receiving the goods from Thompson through an opened door or window and concealing them in the basement to which he had a key until he could remove them.

The overruling of the motion for a new trial is not revisable.

There is no error in the record, and the judgment of conviction must be affirmed.